John J. MORTON

v.

**James R. MILLER, et al.**

Supreme Judicial Court of Maine.

Argued Oct. 29, 1991.

Decided Dec. 10, 1991.

Mark L. Randall (orally), Law Offices of Daniel Lilley, Portland, Christine A. Murphy, Gray, for plaintiff.

Paul A. Driscoll (orally), Cornelia Fuchs Fisher, Norman, Hanson & Detroy, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendants James and Pamela Miller appeal, and plaintiff John Morton cross-appeals, from an order of the Superior Court (Cumberland County, *Cole, J.*) denying the Millers' motion for modification of an order for attachment and trustee process, and Morton's motion for additional attachment. The Millers also attack the constitutionality of Maine's attachment law and procedure. We affirm the order.

In April 1990, Morton brought an action against the Millers alleging undue influence, unjust enrichment, fraudulent inducement, and the existence of a constructive trust. Morton alleges that in April of 1989, he purchased a Tri–State Megabucks lottery ticket on which he won a $5.4 million annuity. Although he purchased the ticket alone, he alleges that James Miller (Morton's half-brother) and Pamela Reynolds (then Miller's girlfriend, now his wife) improperly induced him to sign a sham agreement stating that the three of them would share the proceeds equally. The sole purpose of the sham agreement was to protect the winnings from Morton's first wife and from his then estranged second wife. The agreement was drawn up by the Millers' attorney and James Miller agreed to receive the payments and to be responsible for dividing the money between the three of them.

The first two yearly payments were made in April of 1989 and 1990, and the proceeds divided pursuant to the agreement, with the Millers retaining a total of $281,066.66. As the time approached for the April 1991 payment, Morton filed a motion for a temporary restraining order and preliminary injunction to prevent the Millers from receiving any of it. The court issued a consent order placing the Millers' share of the 1991 payment ($145,066.66) in escrow with their attorney and precluding the Millers from using, assigning, or encumbering it. The order provided that it was effective "until such time that a final order may be entered on Plaintiff's Motion for Preliminary Injunction." [1]

A short time later, on Morton's motion, the court approved an order of attachment and trustee process against the Millers in the amount of $310,000.[2] Morton recorded a copy of the order in the Cumberland County Registry of Deeds. He also trusteed the $145,066.66 being held by the Millers' attorney pursuant to the escrow order.

The Millers subsequently moved to modify the attachment. They contended that the attachment order unnecessarily and oppressively encumbered all of their property, and they requested that the order be modified and limited to encumber only certain specified real and personal properties in their names.

▮ At about the same time, Morton moved for an additional attachment in the amount of $160,000, contending that the previous attachment and trustee order in the amount of $310,000 was insufficient to adequately secure a judgment in favor of Morton subsequent to the 1991 lottery payment. The present appeal and cross-appeal followed the court's denial of both motions.[3]

## THE MILLERS' APPEAL

### A.

▮ The Millers argue that the recording of the $310,000 attachment in the Registry of Deeds encumbers more of their property than is necessary to adequately secure any judgment Morton could be awarded.[4] They claim that because they own property well in excess of $310,000, the blanket attachment unnecessarily encumbers all of it, is excessive, and overly burdensome. The Millers submitted appraisal evidence concerning the values of their real estate and personal property and urged the court to limit the attachment and trustee process to certain specified real and personal property with an aggregate value sufficient to secure a $310,000 judgment. They argued that the remainder of their

---

1. The request for an injunction was not pursued and was later withdrawn by Morton. The order, however, was not rescinded in the record.

2. No appeal was taken from that order.

3. An order granting, denying, or dissolving an attachment, although interlocutory, is immediately appealable. *Casco Northern Bank, N.A. v. Moore,* 583 A.2d 697, 698–99 (Me.1990); *Bay of*

*Naples Condominium Assoc. v. Lewis,* 582 A.2d 1210, 1211 (Me.1990).

4. Because they failed to appeal the order of attachment and trustee process originally issued by the court in May of 1991, the Millers are precluded from attacking the court's finding that there is a reasonable likelihood that Morton will recover a judgment against them.

property should be released from the attachment encumbrance. In opposition to the Millers' motion to modify the attachment, Morton submitted affidavit evidence disputing the values of the properties appearing in the Millers' appraisals. The court denied the Millers' motion finding that they had failed to prove that the property they suggested be subject to attachment was sufficient to cover the amount of the $310,000 attachment. Following the denial of the motion, the Millers made no request for additional findings of fact or conclusions of law. In the absence of findings of fact we assume that the trial court made all the requisite findings to support its conclusion. *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981).

The burden was on the Millers to convince the court that the present attachment is excessive and that their proposed modification and limited attachment would provide adequate security to fully satisfy any judgment likely to be recovered by Morton. *See Maine Nat'l Bank v. Anderschat*, 462 A.2d 482, 484 (Me.1983); *see also* M.R.Civ.P. 4A(c), 4B(c). In view of the conflicting evidence concerning the property values, the court was not compelled to find the attachment excessive, or that the property the Millers proposed to be attached would constitute adequate security, *General Commerce & Indus., Inc. v. Hillside Constr.*, 564 A.2d 763, 765 (Me.1989), and we will not disturb its decision to deny the motion to modify.

### B.

■ The Millers also attack the constitutionality of Maine's attachment and trustee procedure as set out in M.R.Civ.P. 4A and 4B. They rely on *Connecticut v. Doehr*, — U.S. —, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), and argue that Maine's attachment procedure violates the due process clause of the fourteenth amendment to the United States Constitution. The Millers' reliance on *Doehr* is misplaced. In *Doehr*, the United States Supreme Court concluded that the Connecticut procedure allowing ex parte attachment of property without a showing of exigent circumstances amount-

ed to a violation of due process. *Doehr*, — U.S. at —, 111 S.Ct. at 2119. Attachment in this case was granted only after the Millers were given a full opportunity to be heard. The decision in *Doehr* does not mandate the striking down of Rules 4A and 4B on due process grounds.

### MORTON'S CROSS–APPEAL

■ Morton argues that once the 1991 payment was made, he was entitled to an additional attachment order in the amount of $160,000 to cover the amount of the 1991 payment, plus costs and interest. We disagree. Morton had the burden of proof on his motion for additional attachment. We will not disturb the court's denial of the motion unless the evidence submitted in support of it compelled the court to grant it. *General Commerce & Indus., Inc.*, 564 A.2d at 765.

When the court calculates the proper amount to be attached, it must take into account "other security" available to satisfy the judgment. M.R.Civ.P. 4A(c), 4B(c). Morton argues on appeal that the order escrowing the Millers' share of the 1991 lottery payment expired when he withdrew his motion for an injunction and that it was necessary for him to trustee the escrow account, thus reducing by $145,066.66 the amount of attachment on which he could rely as security. As the cross-appellant, however, it is Morton's burden to produce a record adequate for review, *Lamb v. Euclid Ambler Assocs.*, 563 A.2d 365, 367 (Me.1989), and it is far from clear on this record that the escrow order, still valid by its terms, is no longer in full force. Therefore, the court could have concluded that the escrow account in the amount of $145,-066.66 was sufficient "other security" within the meaning of M.R.Civ.P. 4A(c) and 4B(c), and that it was unnecessary for Morton to trustee that account. Accordingly, the court was not compelled to find that the existing $310,000 attachment was inadequate to secure any judgment Morton was reasonably likely to recover. *Town of Eustis v. Stratton–Eustis Dev. Corp.*, 516 A.2d 951, 953 (Me.1986).

The entry is:

Judgment affirmed.

All concurring.