[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas Brazzell, has filed an application for the prejudgment attachment of assets of the defendant, Harvey CT Page 86 Turkel, in this pending action to recover damages for injuries suffered when Brazzell, returning to his State Police vehicle on the side of a highway, was struck by an automobile operated by the defendant. The defendant has filed a special defense alleging that the plaintiff's own negligence caused the accident.
The defendant takes the position that no attachment should be authorized because the facts presented do not establish probable cause. He further claims that if an attachment is authorized, the plaintiff must, in recognition of the defendant's right to due process of law as to a deprivation of the use of his property, post a bond in double the amount of any attachment authorized.
The trial court's function in deciding an application for a prejudgment remedy pursuant to General Statutes 52-278a et seq. is "to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." Bank of Boston Connecticut v. Schlesinger,220 Conn. 152, 156 (1991); New England Land Co., Ltd. v. DeMarkey,213 Conn. 612, 620-21 (1990). The Connecticut Supreme Court has described the quantum of proof necessary to establish cause in various ways. It has repeatedly stated that the hearing in probable cause "is not contemplated to be a full scale trial on the merits of the plaintiff's claim" and that "the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." Id. the Supreme Court has stated that the trial court's role is to "weigh the probabilities," id., Ledgebrook Condominium Ass'n Inc. v. Lusk Corp., 172 Conn. 577, 584 (1977), however the degree of weight required has been left unclear. Because of the Court's statement that a full scale trial on the merits is not contemplated, it appears that the quantum of proof is less than that required as to a full scale trial, that is, less than a preponderance of the evidence.
In New England Land Co., Ltd. v. DeMarkey, supra, at 620, the Court stated that "[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it:. . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 731,103 S.Ct. 14 34, 75 L.Ed.2d 502 (1983)."
When it reviewed Connecticut's prejudgment remedy statute in Connecticut v. Doehr, 111 S.Ct. 2105, 2114 (1991), the United States Supreme Court expressly declined to rule as to the quantum of proof required after discussing the claims of the parties that the standard was, variously "an objective likelihood of the suit's CT Page 87 success", id. at 2113; the plaintiff's demonstrated subjective good faith belief that the suit will succeed, id., and proof of "sufficient facts to survive a motion to dismiss." Id. The Supreme Court found the statute's provision for the granting of attachments without a hearing to constitute a denial of due process of law, tacitly finding the lack of a hearing, not the quantum of proof, dispositive. Connecticut v. Doehr, supra, at 2114. Doehr, therefore, does not supply an answer as to the required level of proof.
The definition of probable cause adopted by the Connecticut Supreme Court in the cases cited above is the standard stated by the United States Supreme Court as to probable cause to seize evidence associated with criminal activity in Texas v. Brown,460 U.S. at 731. A finding of probable cause in that context is required to protect individuals from unreasonable search and seizure pursuant to the Fourth Amendment to the Constitution of the United States. In the context of a deprivation of property, however, the United States Supreme Court indicated in Doehr, supra, that the due process clause is the operative constitutional consideration, and that the process that is due is determined by reference to 1) the private interest that will be affected, 2) the risk of erroneous deprivation through the procedures used, 3) the probable value of additional safeguards, 4) the plaintiff's interest, and 5) the ancillary interest of the government in providing the procedure or foregoing the additional burdens of providing greater protection. Doehr, supra, at 2112.
If the quantum of proof for probable cause is too low, then there is an unacceptable risk of erroneous deprivation to the party whose property is sought to be attached. In the absence of post-Doehr guidance from the Connecticut Supreme Court, it seems advisable to interpret 52-278e as requiring a showing of probable cause to the level found to have satisfied requirements of due process in prior federal cases involving prejudgment deprivation of property. Specifically, in Mitchell v. W. T. Grant Co.,416 U.S. 600, 605-6, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the United States Supreme Court found a Louisiana sequestration statute to be constitutional where the required proof was "a clear showing" on the facts presented.
The liability in the case at bar is contested. The plaintiff testified that he was, in his capacity as a State Police Officer, assisting another officer, William Logiodice, who had stopped a car on Route 9, between exits 5 and 6, in an area with two regular travel lanes, a lane for slow vehicles, and approximately thirty inches of shoulder. The two police vehicles were parked, one behind the other, partly on the shoulder and partly in the slow lane. Trooper Logiodice was attending to a suspect in front of his police car. The plaintiff, who had parked his car behind CT Page 88 Logiodice's car, walked along the shoulder side of the vehicles to approach his fellow officer, then proceeded to walk back to his own car by passing Logiodice's car on the side facing the road, the driver's side. He was struck by the car of the defendant, which was in the middle lane of the three-lane roadway.
Trooper Logiodice testified at a deposition that the plaintiff told him that Logiodice's police dog, seated in the front seat of Logiodice's vehicle with a fully open widow on the driver's side, "barked and scared him."
James Lighthall, a witness who was driving behind the defendant's car, testified at a deposition that as the defendant approached the area where the two police cars were stopped, both he and the defendant moved from the right lane into the center lane (Ex. 2, p. 7). After the accident, both the defendant and Lighthall stopped their cars and got out, and Lighthall testified that when Trooper Logiodice announced that he was arresting the defendant, the "officer that had been hit stated that it was not his fault." (Ex. 6, p. 20).
Based on the police investigation reports contained in Ex.3., it appears that by moving from the right lane to the center lane the defendant took precaution to allow room for people to move along the driver's side of the police vehicles, and it is by no means clear that the exercise of due care would have required him to move to the extreme left lane or that he should have anticipated that someone might move into the center lane rather than walking in the several remaining feet of the lane in which the vehicles were parked. The description of having been startled by a barking dog suggests that the plaintiff's movements were too sudden to allow any evasive action by the defendant.
The defendant has bodily injury insurance coverage in the amount of $300,000.
In light of the likely testimony at trial, the court does not find that the plaintiff has established probable cause that the defendant will be held liable for his injuries in an amount in excess of his insurance coverage, and the application for an attachment of his property is denied.
BEVERLY J. HODGSON, J.