UNITED STATES of America, Plaintiff,

v.

Robert L. TEEVEN, Paul L. Teeven, USA Training Academy, Inc., Teeven Holding Company, RKJ Corporation, Newark Business Center, Inc., Mary Jane Teeven, Louise G. Teeven, Robert F. Teeven, Dina M. Teeven, Kelly Ann Teeven and Jeffrey L. Teeven, Defendants.

Civil A. No. 92–418 LON.

United States District Court, D. Delaware.

Oct. 27, 1992.

Patricia C. Hannigan, Dept. of Justice, Wilmington, DE, Joan E. Hartman (argued), Dept. of Justice, Washington, DC, for plaintiff.

Steven D. Goldberg, of Theisen, Lank, Mulford & Goldberg, Wilmington, DE, Martin D. Minsker and Randall J. Turk (argued) and Cynthia Thomas Calvert, of Miller, Cassidy, Larroca & Lewin, Washington, DC, for Robert L. Teeven, Teeven Holding Co., RKJ Corp. and Newark Business Center, Inc.

Gerard F. Treanor, Jr., and Nancy Voisin, of Venable, Baetjer, Howard & Civiletti, Washington, DC, Karen L. Pascale, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Paul L. Teeven and Louise G. Teeven.

James W. Garvin, Jr., of USA Training Academy, Inc., Newark, DE, for USA Training Academy, Inc.

Richard G. Elliott, Jr. and David L. Finger (argued) of Richards, Layton & Finger, Wilmington, DE, for Mary Jane Teeven, Robert F. Teeven, Dina M. Teeven, Kelly Ann Teeven and Jeffrey L. Teeven.

Gerard A. Chamberlain, of Wilmington Trust Co., Wilmington, DE, for Garnishee Wilmington Trust Co.

Linda A. Blanchfield, of Delaware Trust Co., Wilmington, DE, for Garnishee Delaware Trust Co.

Piet E. vanOgtrop, of Daley, Erisman, vanOgtrop & Hudson, Wilmington, DE, for Martin L. Whiteman and Susan Whiteman.

## OPINION

LONGOBARDI, Chief Judge.

### I. NATURE AND STAGE OF THE PROCEEDINGS

The United States of America (the "Government") brought this action against the Defendants, Robert L. Teeven, U.S.A. Training Academy and Paul L. Teeven, under the False Claims Act and the common law. The "remaining defendants are sued as transferees of wrongfully obtained funds pursuant to

28 U.S.C. §§ 3301–3308 and under the common law of unjust enrichment." Complaint, Docket Item ("D.I.") 1.[1] The Government filed its complaint on July 17, 1992, and shortly thereafter filed an *ex parte* application for prejudgment attachment, garnishment and sequestration under the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. §§ 3001–3308. D.I. 3. The application was accompanied by an affidavit sworn to by LaRoss C. Campbell, a Special Agent with the Inspector General of the United States Department of Education. Mr. Campbell is a certified public accountant and holds a juris doctor degree as well. The affidavit alleges that the USA Training Academy, Inc., Robert L. Teeven and Paul L. Teeven are indebted to the United States in a single damages amount of at least $220,000,000, together with statutory multiples of these damages, civil penalties, interests and costs." Affidavit ("Affid.") ¶ 2 (attached to D.I. 3). After review of the application and accompanying affidavit, the Court issued a writ of attachment and sequestration, D.I. 4, and a writ of garnishment. D.I. 5. These writs were thereafter executed by a Deputy United States Marshal. D.I. 9–44, 57–69.

On July 28, 1992, the Defendants requested a hearing pursuant to 28 U.S.C. § 3101(d)(2) to challenge the issuance of the prejudgment remedies. The parties briefed the matter, D.I. 72–75 and 78, and the Court held a section 3101(d)(2) hearing on August 5, 1992.[2] Pursuant to that hearing, this Court issued a Memorandum Opinion on August 14, 1992, D.I. 94, ordering that the prejudgment writs issued by the Court be quashed due to the Government's failure to comply with the statutory requirements of the FDCPA. *United States v. Teeven*, 1992 WL 683683 (D.Del.1992). Specifically, the Court found that the Government's affidavit did not satisfy the statute's oath requirement

---

1. The remaining Defendants in this matter are divided into two groups for the purpose of resolving those motions presently before the Court. Both groups are represented by independent counsel and each has filed separate motions for resolution by this Court. Group I consists of Mary Jane Teeven, Robert F. Teeven, Dina M. Teeven, Kelly Ann Teeven and Jeffrey L. Teeven (hereinafter referred to as the "Family"). Group II consists of Robert L. Teeven, Teeven Holding Company, RKJ Corporation and Newark Business Center, Inc. (hereinafter referred to as the "Robert L. Teeven Defendants"). In addition, counsel for Defendants Paul L. Teeven and Louise G. Teeven have indicated to this Court that having reviewed the briefs and exhibits submitted on behalf of the Robert L. Teeven Defendants, they choose to join in those submissions. D.I. 132. Accordingly, they are treated as part of the Robert L. Teeven Defendants.

2. 28 U.S.C. § 3101(d)(2) states that:

By requesting, at any time before judgment on the claim for a debt, the court to hold a hearing, the debtor may move to quash the order granting such [prejudgment] remedy. The court shall hold a hearing on such motion as soon as is practicable, or, if requested by the debtor, within 5 days after receiving the request for a hearing on such motion as soon thereafter as is practicable. The issues at such hearing shall be limited to—

(A) the probable validity of the claim for the debt for which such remedy was granted and of any defense or claim of exemption asserted by such person;

(B) compliance with any statutory requirement for the issuance of the prejudgment remedy granted;

(C) the existence of any ground set forth in subsection (b); and

(D) the inadequacy of alternative remedies (if any) to protect the interests of the United States.

Section 3101(b) sets forth the grounds under which the United States may obtain a prejudgment remedy:

Subject to section 3102, 3103, 3104, or 3105, a prejudgment remedy may be granted by any court if the United States shows reasonable cause to believe that—

(1) the debtor

(A) is about to leave the jurisdiction of the United States with the effect of hindering, delaying or defrauding the United States in its effort to recover a debt;

(B) has or is about to assign, dispose, remove, conceal, ill treat, waste or destroy property with the effect of hindering, delaying or defrauding the United States;

(C) has or is about to convert the debtor's property into money, securities or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying or defrauding the United States; or

(D) has evaded service of process by concealing himself or has temporarily withdrawn from the jurisdiction of the United States with the effect of hindering, delaying or defrauding the United States; or

(2) a prejudgment remedy is required to obtain jurisdiction within the United States and the prejudgment remedy sought will result in obtaining such jurisdiction.

and failed to demonstrate with enough particularity facts supporting the probable validity of the debt. *Id.* 1992 WL 683683, at \*10.

In response to the Court's opinion, the Government filed an amended application and affidavit on August 17, 1992 seeking to revive the writs *nunc pro tunc.* Campbell Amended Application and Affidavit, (hereinafter "Amended Affidavit"), D.I. 102. The Court granted the Government's motion via a telephone conference on August 19, 1992, holding that the Government's amended application and affidavit met the requirements of 28 U.S.C. § 3101(a), (b) and (c). The Court drafted an order documenting those findings on August 20, 1992. D.I. 107.

The parties once again briefed the matter, D.I. 109, 112, 114, 135, 137, 139, 141, 144, and on September 2, 1992 the Court held a second hearing pursuant to 28 U.S.C. § 3101(d)(2), at which time the Government and the Defendants made oral arguments responding to the Defendants' challenge of the August 20th Order. Presently before the Court are a Motion to Quash the Writs and a Motion to Consider Alternative Remedies submitted by both the Family Defendants and the Robert L. Teeven Defendants. For the reasons contained herein, the Court denies the Defendants' motions.[3]

## II. *COMPLIANCE WITH STATUTORY REQUIREMENTS*

Section 3101(a) of title 28 of the United States Code provides:

(a) **Application.**—(1) The United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy sought.

(2) Such application shall be filed with the court and shall set forth the factual and legal basis for each prejudgment remedy sought.

(3) Such application shall—

(A) state that the debt against whom prejudgment remedy is sought shall be afforded an opportunity for a hearing; and

(B) set forth with particularity that all statutory requirements under this chapter for the issuance of the prejudgment remedy sought have been satisfied.

Section 3101(c) provides:

(c) **Affidavit.**—(1) The application under subsection (a) shall include an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application.

(2) The affidavit shall state—

(A) specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt;

(B) one or more of the grounds specified in subsection (b);

(C) the requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be.[4]

(3) No bond is required of the United States.

Both the Family and Robert L. Teeven Defendants have filed motions to quash the writs issued by this Court, claiming that the Government has once again failed to comply with the statutory prerequisites of the FDCPA. Additionally, both have asked this Court to consider "less restrictive" alternative remedies to the writs that have been issued.

## III. *FAMILY'S MOTION TO QUASH*

In support of their Motion to Quash the writs, the Family sets forth various legal and factual arguments as to how the Government has failed to satisfy the mandatory statutory requirements under the FDCPA for a prejudgment seizure of assets. Those arguments are: (1) that the affidavit submitted by the Government has failed to "specifically

---

**3.** Because the Family Defendants and the Robert L. Teeven Defendants bring these motions under very distinct factual and legal theories the Court analyzes their arguments separately.

**4.** These sections, respectively, pertain to the issuance of a writ of attachment, appointment of a receiver, and issuance of writs of garnishment and sequestration.

state the amount of the debt claimed by the United States and any interest or costs attributable to that debt;" 28 U.S.C. § 3101(c)(2)(A); (2) that the value of the seized assets may exceed the value of the Family's alleged debt; and (3) that the Government is required to show that the Family as "transferees" possessed an actual intent to hinder, delay or defraud a creditor.[5]

## A. Specific Amount of the Debt

■ In an application for a prejudgment remedy under the FDCPA, the Government must provide an affidavit "establishing ... to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application." 28 U.S.C. § 3101(c)(1). "The affidavit shall state specifically the amount of the debt claimed by the United States...." 28 U.S.C. § 3101(c)(2)(A). Towards that end, the Government submitted the affidavit of LaRoss C. Campbell. Amended Affidavit, D.I. 102. The Family contends that Mr. Campbell's affidavit is insufficient to satisfy the standards set forth by the statute. The Court disagrees. The Court is now convinced that the Government has stated with sufficient specificity the amount of the debt, thereby establishing to the Court's satisfaction the probable validity of a claim for a debt by the Government. *Cf. United States v. Teeven*, 1992 WL 683683, at *10, Longobardi, J. (D.Del. Aug. 14, 1992) ("the affidavit does not establish *with enough particularity* facts supporting the probable validity of the Government's claim ... and does not explain with particularity the basis for the averments connected with a specific Defendant").

To demonstrate the specific amount of the debt, the Government points to that part of Mr. Campbell's affidavit stating that Robert L. Teeven's family and two corporations under their direction have been unjustly enriched (and thus the amount of their debt to the United States) in an amount of no less than $46 million. Government Opposition Brief to Motion to Quash (hereinafter referred to as "GOB I."), D.I. 135 at 15. This figure is sworn to by Mr. Campbell to represent the 97% of subchapter S distributions made to Robert L. Teeven corresponding to the 97% share of school income that federally funded programs represented. *Id.* Mr. Campbell bases this conclusion on his review of the schools records showing the percentage of school income attributable to Department of Education programs and a review of USA Training Academy tax returns. Amended Affidavit, D.I. 102 ¶ 7 at 9–10.

■ The Family offers no evidence whatsoever to contradict this specific figure attested to by Campbell.[6] Rather, they claim that "[m]oney allegedly received by Robert L. Teeven does not automatically equate to money allegedly received by the Family." Family Reply Brief, D.I. 139 at 4. The thrust of their position is that the Government cannot demonstrate the specific amount of the debt owed unless it demonstrates specifically how much of the $46 million Subchapter s distributions were actually transferred to the Family, since it is the Family from whom the Government has seized assets. *Id.*

The Family's argument self-destructs. Based on a review of land and tax records of Delaware, responses from Delaware Trust Company and Wilmington Trust Company to

---

5. The family bases this argument on a creative interpretation of Section 3304(b) of the FDCPA. See *infra*, for the Court's discussion of this provision.

6. At least there is no dispute on this figure in either the Opening or Rebuttal Briefs filed by the Family. However, at oral arguments on September 2, 1992, counsel for the Family argued that the first affidavit of William C. Abernathy, (D.I. 75) a financial organizer for Mary J. Teeven and Robert L. Teeven's personal and business assets, made it evident that of this 46 million-dollar figure, approximately 15 million dollars went to

pay taxes and another 17 million dollars went back into the school. Oral Argument Transcripts, D.I. 147 at 22 (citing Abernathy Affidavit, D.I. 75 ¶¶ 5–8). A close examination of the Abernathy affidavit reveals that nothing the Defendant raised in this regard was "evident." The Abernathy affidavit makes no reference to 15 million in taxes and the 17 million allegedly put back into the school is consistently said to have come from Robert L. Teeven's personal assets. D.I. 75 at 2–4. Thus, contrary to the Defendants' position, the $46 million figure can be imputed by the Court as being transferred to the Family.

questions concerning bank and land records, and his review of the affidavit initially filed by one William Abernathy in support of Defendant's Motion to Quash, Campbell has demonstrated in painstaking detail that an undivided interest in *all* of Robert L. Teeven's assets acquired via school funds have been transferred to Mary J. Teeven and that some of those obtained from the school have been transferred to trust funds for Robert L. Teeven's children. Amended Affidavit, D.I. 102 at 7–14 (emphasis added). Thus, the Family's argument that there is an insufficient basis to believe that the assets purchased with school funds have been transferred to the Family is easily rejected.

Additionally, the Family's contention that "Mr. Campbell ... should have sufficient information to determine exactly how much money the other Defendants actually transferred to the Family," Reply Brief of Family, D.I. 139, overstates the requirements placed on the Government in order to satisfy their burdens of compliance under the FDCPA. The Government, having offered via a sworn affidavit with specific and uncontradicted averments that Robert L. Teeven was unjustly enriched in the amount of $46 million and that Robert L. Teeven's assets have in one form or another been transferred to the Family, has demonstrated to this Court's satisfaction the "probable validity" of the claim of that debt owed by the Family. 28 U.S.C. § 3101(c)(1). It is not necessary at this stage for the Government to prove how every dollar of the alleged debt has been transferred to the Family as the Section 3101(d)(2) hearing is not intended to be a trial on the merits.[7]

Unlike the prior application for pre-judgment writs, in this instance the Family has been unable to cast a cloud over the Government's showing of probable validity because the Government has corrected those aspects of its application which were "regrettably deficient," through more specific averments supporting its conclusions. *Teeven,* 1992 WL 683683, at *9. Moreover, in the absence of any contradictory evidence, the Government need not eliminate every conceivable explanation concerning the specific nature of the debt, to make its showing of "probable validity."

Rather, the FDCPA expressly contemplates that once the Government has met its burden of demonstrating "probable validity," the party seeking to have a prejudgment order quashed must make an affirmative showing as to why the debt is not probably valid. 28 U.S.C. § 3101(d).[8] Specifically the statute provides:

> At the hearing *you* may explain to the judge why *you* think *you* do not owe the money to the Government, why *you* disagree with the reason the Government says it must take your property at this time, or why *you* believe the property the Government has taken is exempt or belongs to someone else. *You* may make any or all of these explanations as *you* see fit.

*Id.* (emphasis added). As the statute plainly indicates, at the post-deprivation hearing, the debtor must affirmatively show cause as to why the writs should be quashed. Absent a compelling reason, this Court should not deviate from the plain meaning of the statute. *Teeven,* 1992 WL 683683, at *2–5 (holding that the clear, unambiguous mandate of the statute must be observed).[9] Because the Family has offered no significant rebuttal evidence to support the quashing of the writs, the Court holds that the Government

---

7. In light of this conclusion, the Court defers any judgment on the Family's newly raised "statute of limitations" concern, Family's Reply Brief (hereinafter FRB), D.I. 139 at 5, as such a defense is more properly raised as part of a trial on the merits.

8. Alternatively, as this Court has already intimated, even if the statute is read so as not to require the Defendant to make any sort of evidentiary showing, the Government's Amended Affidavit, D.I. 102, with more direct and particular foundations for its conclusions, has satisfied the burden

of compliance with the statute, and thereby has demonstrated the probable validity of the debt. See *infra,* for a more detailed treatment of the burden of proof question.

9. *Accord, Amp Inc. v. U.S.,* 820 F.2d 612, 615 (3d Cir.1987) (In adopting the plain meaning principle from numerous Supreme Court decisions, the Court noted that "[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.") (citations omitted).

has shown the specific amount of the Family's debt so as to support a finding of the probable validity of the debt.

### B. Seized Assets May Exceed the Alleged Debt

■ For essentially the same reasons as have previously been stated, the Court also rejects the Family's claim that the Government has not shown with enough particularity that the assets seized by the Government do not exceed the amount of the Family's alleged debt.

In various provisions of the FDCPA, the statute requires that any property seized by the Government not exceed the amount of the debt, plus interests and costs. 28 U.S.C. §§ 3102(a)(2), 3104(c), 3105(a)(2). The Court does not dispute the fact that the Government would be unable to demonstrate the compelling need and exigent circumstances required for prejudgment seizures, for assets not required to satisfy its claims. *See* H.R.Rep. No. 736, 101st Cong., 2d Sess. 27, (prejudgment seizures are warranted only when compelling circumstances are present); *Teeven,* 1992 WL 683683, at *5 (Constitution requires a compelling need and exigent circumstances for prejudgment seizures) (citations omitted). Here, however, the Government has already established with sufficient particularity to support a seizure that the Family has been unjustly enriched in the amount of 46 million dollars. The value of the assets that have been seized at most total 19 million plus dollars.[10] As such, there is little merit in Defendant's position.

The Family claims that the Government's argument of compliance on these grounds "is a gross oversimplification." Reply Brief of the Family, D.I. 139. Yet, the Family offers nothing of substance to complicate this simplicity. Rather, they continue to rely solely on the alleged failure of the Government to comply with statutory requirements, without any compelling evidence as to how the Government has failed.

Defendants' main argument is that Campbell's affidavit fails to explain how he reached the conclusion that the Family had no independent sources of income or assets unrelated to the alleged fraud. Reply Brief, D.I. 139 at 6–7. Defendants find support for the notion that this defect is fatal based on this Court's previous ruling to quash the writs originally issued. Reply Brief, D.I. 139 at 7 ("This Court has emphasized that, to establish the right to invoke the drastic prejudgment remedies under FDCPA, a supporting affidavit must state facts providing evidentiary support for conclusory allegations") (citing *Teeven,* 1992 WL 683683, at *9–10).

■ Unfortunately for the Family, they have overstated the reach of that holding. Our prior holding does not purport to make the Government's task of proceeding under this statute as complicated as the Family would prefer. Rather, the Government must be able to support its conclusions in such a manner as to satisfy the Court of the *probable* validity of the debt. Campbell's supposed failure to specifically allege the particulars of his "investigation" as to whether the Family had other sources of income unrelated to the alleged fraud does not diminish his well documented findings that Robert L. Teeven allegedly was unjustly enriched for $46 million and that all of his assets have been transferred to his wife and children. Having investigated the financial history of this Family from countless directions, Mr. Campbell need not go any further in order to support a showing of "probable validity."

■ As noted *supra,* the statute does not envision a Section 3101(d) hearing where the Defendant constantly shifts the burden to the Government to prove and reprove the probable validity of the debt. Once the Government has satisfied the Court that there

---

**10.** According to the Government, the Campbell affidavit avers that "the total unencumbered value of the property of the seized assets is approximately 10.7 million," far less than the "unjust enrichment" debt owed by the family. Government Opposition Brief, D.I. 135 at 15–16. Conversely, the second affidavit of William Abernathy, submitted on behalf of the Family indicates that the total value of the seized property is $19,317,049. Abernathy Affidavit II, D.I. 122 at 2, ¶ 4. In either case there is nothing in the record to contradict the conclusion established by Campbell's affidavit that the amount that has been seized is far less than the unjust enrichment allegedly attributable to the Family.

probably exists a debt, the onus is on the Defendant to show that the Government has seized more than is allegedly owed. 28 U.S.C. § 3101(d). If there exists property, gifts, assets or income that the Family can demonstrate were in place before the alleged unjust enrichment, the Family must at this point bring them to the Court's attention. Moreover, this Court cannot imagine why the Family would choose *not* to offer the Court such evidence at a hearing concerning the reach of the writs, if such evidence indeed existed. Had that occurred, the Court may have had a more difficult time in concluding that the assets seized do not exceed the amount of the alleged debt.

The Family makes no such showing. In fact, as the Government points out, the Mary J. Teeven affidavit, D.I. 110, submitted on behalf of the Defendants "contains no information about any additional sources of income" and also supports the Campbell Affidavit when it claims " 'that her sole source of support' was Robert L. Teeven and his income." GOB I., D.I. 135 at 16. Accordingly, the Court finds that the Family, despite numerous opportunities to do so, has produced no evidence to contradict the Government's showing of the probable validity of the debt. The Government has therefore satisfied its statutory burden.

## C. Actual Intent to Hinder Under Subchapter D of the FDCPA

The Family also attempts to shift the Court's analysis away from the grounds set forth in Section 3101 (see *supra,* note 1), in which the Government must show reasonable cause to believe that the debtor's conduct will have the *effect* of hindering or delaying the Government in its effort to recover a debt. The Family Defendants contend that the Government can in no way show that the Robert L. Teeven or the Family had an *actual* intent to hinder or delay the Government's efforts to collect a debt, and, that their conduct must be examined by this Court under the standards set forth by Section 3304 of the FDCPA (contained in Subchapter D of the statute), which contains an

actual intent requirement. FRB, D.I. 137 at 1–3; FOB, D.I. 109 at 8–10.

Section 3304(b) of the FDCPA provides:

**(b) Transfers without regard to date of judgment**—(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation incurred, if the debtor makes the transfer or incurs the obligation—

**(A)** with *actual intent* to hinder, delay or defraud a creditor; or

**(B)** without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—

(i) was engaged or was about to engage in a business or a transaction for which the remaining business assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they came due. (emphasis added).

Defendants posit that Subchapter D "provides substantive, and not merely procedural, law [for] determining the circumstances under which the United States may recover assets transferred to third parties." FRB, D.I. 139 at 1. In particular, the Family argues that allowing the Government to recover under the restitutionary state law theory of unjust enrichment, allows the Government to avoid the substantive requirements of 28 U.S.C. § 3304. *Id.* Ultimately, it is the Family's position that a state law unjust enrichment claim against third-party transferees under Section 3101 of the FDCPA (with no "intent" requirement), is inconsistent with the substantive provisions of Section 3304(b) (containing an element of intent), and that therefore the state law theory of recovery is preempted. *Id.* (citing 28 U.S.C. § 3003(d) ("[t]his chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter")).[11]

---

**11.** In its papers, the Government claims that

Subchapter D does not control the Government's

Defendants' argument is a creative ·and thought-provoking attempt to circumvent this Court's prior holding on the issue of intent. In holding that the Government had shown a compelling need and exigent circumstances favoring a prejudgment seizure of assets, this Court specifically found no "intent" requirement. *Teeven*, 1992 WL 683683, at *7.[12] The Family's argument in this instance is flawed on two fronts.

First, their position is based on a fundamental misapplication of both the text and purpose of Section 3304. In short, the Court is not limited by this provision when examining whether the Government may recover against the Family. The plain language of the title of this provision concerns itself with how the Government may proceed as to allegedly fraudulent transfers, "without regard to the date of *judgment*." 28 U.S.C. § 3304 (emphasis supplied).[13] In essence, this provision enables the Government to seek recovery for improper transfers made by a judgment debtor whether such transfers were made before or after the United States obtains judgment on the debt. This position is directly supported by the act's legislative history:

> Section 3304 describes the tests for determining whether a transfer is fraudulent as to the United States in connection with an action to recover a debt from a *judgment debtor*. Situations in which a transfer occurs after the United States *obtains judgment on a debt*, as well as situations in which the transfer occurs before the United States *obtains judgment on a debt*, are described.

H.R.Rep. No. 736, 101st Cong., 2d Sess. 33 (emphasis supplied). Here, there exists no judgment on a debt against any of the Defendants. More importantly, the alleged "transferor," Robert L. Teeven, has not yet been adjudicated as a judgment debtor. Rather, at this point the Government has moved under the provisions authorizing prejudgment relief. Thus, allowing the Government to proceed against the Family under a state law theory of unjust enrichment in a prejudgment proceeding is not inconsistent with Subchapter D's concern with the Government's ability to proceed after a judgment. Accordingly, Subchapter D is "not rendered a nullity," FRB, D.I. 139 at 2, and is in no way a bar to a claim against the Family as "debtors" for unjust enrichment. *Cf., Commonwealth of Pa., Dep't. of Public Welfare v. U.S. Dep't. of Health & Human Servs.*, 928 F.2d 1378, 1385 (3d Cir.1991) ("courts should avoid a construction of a statute that renders any provision superfluous, void or insignificant").

Alternatively, even if this Court's analysis were incorrect, the Government would still be entitled to seek recovery.[14] The first factor that the Court is entitled to consider in determining whether the transferor had an "actual intent to hinder, delay, or defraud a creditor," 28 U.S.C. § 3304(b)(1)(A), when

---

right to recover, since the Government may recover against the Family as "debtors" as defined by 28 U.S.C. § 3002(4) ("Debtor" means a person who is liable for a debt or against whom there is a claim for a debt"). (GOB I., D.I. 135 at 16–17). However, the Government does not entirely abandon Count IX its Complaint, brought under 28 U.S.C. §§ 3304(a) and 3304(b). Complaint, D.I. 1 at 40–41. At oral argument, the Government contended that all the transfers made to Family members were made without receiving a reasonably equivalent value in exchange for those transfers, and that accordingly, such transfers were fraudulent within the meaning of section 3304. Transcripts of Oral Argument, (hereinafter "transcripts") D.I. 149 at 49.

The Court accepts both of these arguments as persuasive, for reasons contained within the text of this opinion.

12. In *Teeven*, the Court held specifically that: First, section 3101(b) does not require the Government to show that a debtor's actions are

fraudulent or secretive. Rather, the Government must provide the Court with a reasonable cause to believe the Defendants have or are about to take actions with regard to their properties that would have "the effect of hindering, delaying or defrauding the United States." 28 U.S.C. § 3101(b). The statute contains no "intent" requirement.
*Teeven*, 1992 WL 683683, at *7.

13. *See*, William N. Eskridge Jr. and Phillip P. Frickey, Legislation 466 (1988) ("title cannot control the plain words of the statute" but "[i]n cases of ambiguity the court may consider the title to resolve uncertainty in the purview [the body] of the act. . . .").

14. The Court undertakes this analysis because the Government in Count IX of its Complaint has brought a claim for fraudulent conveyance against the Family. Complaint, D.I. 1 at 40–41.

the transfers were made, is whether the transfer was to an "insider." [15] 28 U.S.C. § 3304(b)(2)(A). The statute defines an insider, if the debtor is an individual, as "a relative of the debtor." 28 U.S.C. § 3301(5)(A)(i).

Thus, by the terms of the statute, a Court may find that the debtor possessed an actual intent to hinder, delay or defraud the creditor, when transferring assets, by the mere fact that the transfers were made to relatives of the transferor. Such is the case here. As the Campbell affidavit has shown to this Court's satisfaction, 46 million dollars worth of assets obtained through the alleged fraud of Robert L. Teeven have been transferred to insiders (his wife and three children). Campbell Affidavit, D.I. 102 at 10–15. Therefore, "within the four corners of the application and supporting affidavit" is support for a finding that these transfers exhibited an actual intent to hinder creditors, notwithstanding the Family's claim that Mr. Teeven's actions with respect to his assets were neither fraudulent, nor secretive. *Teeven*, 1992 WL 683683, at *7.[16] Consequently, the Court rejects the Family's argument that the Government is not entitled to recover the debt from the Family.

Having found that the Government has stated the amount of the debt against the Family sufficiently to support the probable validity of the debt, as well as the Government's right to recover against the Family, this Court denies the Family's Motion To Quash.[17]

## IV. FAMILY'S MOTION TO MODIFY THE WRITS

"The court may at any time on its own initiative or the motion of any inter-

ested person, ... make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. Here, the Family "appeals to the Court's discretionary authority and sense of equity" for a modification of the writs. Reply Brief, D.I. 139 at 11. The Family contends that maintenance of the writs will cause the Family to suffer continued economic hardship, a reduction in its standard of living prior to judgment and the denial of the attorney of its choice. *Id.*

The Court is not inclined at this time to modify the writs because it is concerned about the most recent inclination of the Family to sell off its properties. Moreover, the Court is not persuaded that the Family is suffering such hardship as to offend the Court's sense of equity. Rather, the Court reiterates its underlying concern that these seized properties not be wasted or dissipated by neglect or failure to maintain them and that the parties work with tremendous energy and candor towards a plan that would preserve the assets. Transcripts, D.I. 149 at 84, 89 and 94. In the absence of such a plan the Court, pursuant to its authority under the FDCPA, will create one. The motion will be denied without prejudice pending disposition of the Court's directive concerning a plan prepared by the parties or one that is imposed by the Court.

## V. ROBERT L. TEEVEN DEFENDANT'S MOTION TO QUASH

In support of their Motion to Quash the writs, the Teeven Defendants make detailed

---

**15.** " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 28 U.S.C. § 3301(6).

**16.** Additionally, the Government need not demonstrate an actual intent to delay in order to proceed under subchapter D for debts fraudulent as to the United States. 28 U.S.C. § 3304(b)(1)(B)(i) (Debtor liable if assets transferred without receiving reasonably equivalent value at a time when the debtor was about to engage in a business for which the remaining

assets of debtor were unreasonably small in relation to the business). The Government has shown the probable validity that Mr. Teeven transferred many of the disputed assets without receiving a reasonably equivalent value, at a time in which Mr. Teeven knew that his assets were unreasonably small in relation to his business obligations. Amended Affidavit, D.I. 102.

**17.** The Family raised an issue in their motion as to whether the Court, if it had quashed the writs must release those properties held in the entirety, pursuant to Section 3010 of the Act. FRB, D.I. 139 at 7–9. Since the Court did not quash the writs, that issue is not addressed.

legal and factual arguments as to how the Government has failed to satisfy its statutory burdens under the FDCPA. The Defendants' arguments center around the Government's alleged inability to sufficiently demonstrate the "probable validity" of the claims against Robert L. Teeven. Robert L. Teeven Opening Brief, (hereinafter "TOB"), D.I. 114 at 2. In particular, the Defendants take issue with the three areas that the Government emphasizes as showing the probable validity of the debt: (1) the alleged fact the school would not have been accredited had the school practices been known to the accrediting body (The False Accreditation Claim); (2) the alleged inflated default claims submitted to the United States by reason of the alleged failure to pay refunds (The Refund Claim); and (3) the alleged failure of the school's course to meet the clock hour requirements and thus the alleged ineligibility of each student to receive federal grants or federally insured funds (The Course Length Claim). *Id.* at 3. The Defendants then reiterate separately and in more detail that the Campbell Affidavit fails to meet the applicable statutory and constitutional tests, because it offers only general averments regarding the veracity and reliability of his sources. *Id.* at 27–31. Lastly, the Defendants contend that the Campbell Affidavit fails to establish the compelling need for the prejudgment relief the Government seeks. *Id.* at 31–36.

### A. Burden of Proof at the Section 3101(d) Hearing

As a preliminary matter, this Court seeks to clarify a procedural complexity that has been raised consistently throughout these proceedings.[18] Specifically, the Court seeks to resolve the issue of the various burdens placed on the parties once the Court has issued a prejudgment writ under the statute. The Defendants claim that the burden at the post-deprivation § 3101(d) hearing is on the Government to prove with traditional and admissible forms of proof "the probable validity of its claim and its entitlement to the writs that were issued on an *ex parte* basis." Robert L. Teeven Defendant's Reply Brief (hereinafter "TRB"), D.I. 144 at 2–3. Conversely, the Government claims that "[t]he burden has now shifted to the defendants to show that they 'do not owe the money to the Government.'" GOB I., D.I. 135 at 1.

■ At a post-deprivation hearing, a defendant, by exercising the statutory right to move to quash the writ, is essentially claiming that the Court was in error in its decision to initially grant the writ. In challenging the issuance of the writs the Defendants can bring forth any evidence relevant to the four issues to be addressed at a post-deprivation hearing. 28 U.S.C. § 3101(d)(2).[19] One of those issues, challenged here by the Defendants, is whether the Government has indeed shown the probable validity of the claim for the debt. 28 U.S.C. § 3101(d)(2)(A).

■ Thus, at the hearing the Defendant bears the initial burden of placing the Government's showing of the probable validity of the debt in dispute.[20] However, at the hearing the Government still maintains the burden of showing compliance with the statute. If the Court has determined that the Government has complied with the statute in the first instance it has necessarily shown the probable validity of the debt. *Cf.* 28 U.S.C. § 3101(c)(1) (for prejudgment remedies Government's application shall include an affidavit establishing with particularity to the court's satisfaction the probable validity of the claim for the debt).[21] To meet this bur-

---

**18.** See text accompanying note 8 *supra*, for a previous discussion on the burden of proof question.

**19.** See *supra*, note 2.

**20.** In essence, if the Defendant simply requested a hearing and proclaimed in a conclusory manner that the Government had not shown the probable validity of the debt, there would be nothing before the Court to contradict the Court's initial finding that the Government's ap-

plication and affidavit demonstrated the probable validity of the debt. Thus, the Government would undoubtedly satisfy its burden.

**21.** In this regard, the Court's opinion is consistent with those cases relied on by the Defendant, envisioning the plaintiff/creditor having the post-deprivation burden of proving the probable validity of the claim. *North Georgia Finishing Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 722–23, 42 L.Ed.2d 751 (1975) (There is no provision for an early hearing at which the creditor

den, the Government may rely on their application and affidavit, respond to the challenges raised by the Defendant, and offer any other evidence during oral arguments that they have to support the probable validity of the debt.[22]

 As is the case here, if the Court determines that the Government has complied with the terms of the statute, thereby demonstrating the probable validity of the debt, the burden of going forward with evidence to dispute the claims of the Government is on the Defendant. The Defendant must make an affirmative showing as to why the debt is probably not valid.[23]

would be required to demonstrate at least probable cause for the garnishment); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 608, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974) (due process is comported with if after an *ex parte* seizure, there is an early opportunity to put the creditor to his proof); *Jonnet v. Dollar Savings Bank*, 530 F.2d 1123, 1130 (3d Cir.1976) ("We read Mitchell and Di–Chem to require an opportunity for a prompt hearing after seizure at which the plaintiff would be required to demonstrate at least the probable validity of his claim ...").

However, in assessing the appropriate burdens on the parties, the Court does not purport to be bound by the decisions in *Di–Chem* and *Jonnet*, because they involved the invalidation of state statutes which provided defendants with virtually no procedural safeguards against wrongful attachment. See generally, *Di–Chem*, 419 U.S. 601, 95 S.Ct. 719; *Jonnet*, 530 F.2d 1123. Conversely, under this federal statute, which expressly envisions that the Defendant offer some substantive evidence at the hearing (§ 3101(d)), Defendants are well safeguarded. The Government must satisfy the Court via a sworn affidavit that it has complied with the very specific requirements laid out by the statute for the writ to be issued; defendants receive prompt and detailed notice of the attachment as well as a full explanation of their present and future rights; and upon request, defendants are afforded a full and fair hearing within 5 days, on those issues critical to the granting of the prejudgment remedy. See 28 U.S.C. § 3101.

Moreover, a close reading of *Mitchell* indicates that allocating the burden of proof onto the plaintiff is not a constitutional prerequisite for a statute authorizing prejudgment relief. *Mitchell*, 416 U.S. at 608–09, 94 S.Ct. at 1900–01. Defendants' notion that shifting the burden of proof to the Defendant is unconstitutional, TRB, D.I. 144 at 2, has been consistently rejected by the circuits in the more extreme deprivation context of civil forfeitures. See e.g., *United States v. 228 Acres of Land and Dwelling*, 916 F.2d 808, 814 (2d Cir.1990) (We find nothing unconstitutional in Congress's allocation of the burdens of proof in forfeiture cases), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058; *United States v. Santoro*, 866 F.2d 1538, 1543 (4th Cir.1989) (The way the burden of proof is allocated does not violate due process); *United States v. $250,-000 In U.S. Currency*, 808 F.2d 895 (1st Cir.1987) (Congress may generally alter the traditional allocation of the burden of proof without compro-mising due process unless the statute is criminal in nature).

However, even if the Government always has the burden of proving compliance with the statute, the Court is convinced that the Government's support of its amended application and affidavit at the post-deprivation hearing established the probable validity of the debt.

22. Nowhere in the text or the history of this statute is it suggested that this hearing is intended to be a trial on the merits. Thus, Defendant's claim that the Government must prove more than "probable cause" is rejected. TRB, D.I. 144 at 2. The Court must only be satisfied of the *probable validity* of the claim of the debt. For purposes of this hearing, the Court need not exclude from its consideration *any* evidence, whether admissible at trial or not, supporting or contradicting the probable validity of the debt. Moreover, the Court may consider the testimony of live witnesses if the respective parties choose such a course or the hearing may be limited to the briefs and affidavits submitted by the parties. The parties in this action opted for a hearing strictly on the papers already before the Court.

23. The Court interprets the FDCPA in a manner somewhat analogous to civil forfeiture statutes which shift the burden of disproving the probable validity of the claim directly onto the defendant at a post-deprivation hearing. See e.g., 19 U.S.C. § 1615. As noted, *supra*, note 23, the constitutionality of this allocation of the burden of proof has been upheld consistently in other circuits.

Under the FDCPA, if the Defendant does not substantively contest the probable validity of the debt, after the Court determines that the Government's affidavit can in fact support the probable validity of the debt for which the Court granted the *ex parte* writ, the Defendant's motion must fail. Based on those civil forfeiture decisions upholding a direct shifting of the burden of proof to disprove a claim's validity, this more indirect shifting of the burden of proof after the Government re-demonstrates compliance in no way offends due process. See FRB, D.I. 144 at 2 n. 2 ("The Court of course must construe the statute to ensure its constitutionality, particularly since Congress manifested its intent that the Court do so.") (citations omitted).

## B. The Government's Proof of the Probable Validity of the Debt [24]

### 1. THE FALSE ACCREDITATION CLAIM

The Government claims that the Department of Education certified USA Training Academy, a school founded and operated by Robert L. Teeven, for participation in its program, based on an accreditation that was obtained through fraud by Robert L. Teeven. GOB I., D.I. 135 at 2–3. More importantly, the Government claims that as a result of this fraudulently obtained accreditation, Robert L. Teeven, his family and other related entities received millions of dollars in federal grants and government-insured loans to which they were not entitled. *Id.*

The Defendants claim that the Government has no particularized factual basis for its claim against Robert L. Teeven based on false statements to the school's accrediting body. TOB, D.I. 114 at 26–27. In support of their position the Defendants carefully dissect each averment made by Mr. Campbell in the Amended Affidavit, D.I. 102, and assert that the information in the affidavit cannot be adjudged reliable. The Defendants claim that as a result, this Court should find that the Government has not made a showing of the probable validity of the debt. This Court disagrees.

Mr. Campbell establishes without dispute, the probable validity that USA Training Academy would not have received accreditation from the National Home Study Council, the body charged with granting accreditation, had that body known of the alleged violations committed by the school. Amended Affidavit, D.I. 102 ¶ 18 (conclusions based on interviews with those individuals responsible for making eligibility decisions). In many averments throughout the affidavit, the Government attempts to support the probable validity of the following violations that led to the school being falsely accredited; (1) a policy not to pay refunds; [25] (2) a practice of altering and removing pertinent records; and (3) numerous violations of law. Amended Affidavit, D.I. 102, at ¶¶ 5, 6 and 42 (refunds); ¶¶ 26, 32, 34, 38, 43 (alteration and removal of records); and ¶¶ 5, 17, 25–44 (violations of law).

Contrary to the Government's position that the alleged violations leading to the false accreditation "were all known to, and directed by, Robert L. Teeven," GOB I., D.I. 135 at 3, the Defendants contend that these paragraphs fail to show the probable validity of these falsehoods against Robert L. Teeven. TRB, D.I. 144 at 3.[26]

**24.** To satisfy its burden of the probable validity of the debt, the Government need not be successful on all of its multiple independent claims for liability. Rather, in evaluating the *probable* validity of the debt, the Court adopts a "totality of the circumstances" approach. Thus, even if the Defendant were to persuade this Court that any one of these claims could not stand on its own as demonstrating "probable validity" the Court could still reach the conclusion that the Government had met its burden by examining all of the underlying circumstances which support probable validity under at least one of its claims.

**25.** The Court notes that the Government's "Refund Claim" represents a subset of the larger debt that is due. Additionally, the Government refers to Defendants' refund policy as one of several reasons the Defendant was able to procure false accreditation for USA Training. Because the Court ultimately finds that the False Accreditation Claim is demonstrated by the Government on grounds independent of a fraudulent refund policy (i.e. material alteration of records, false certification to the Department that USA Training was complying with all statutes, other violations), in an effort at clarity, the Court analyzes the Refund Claim separate from the False Accreditation Claim.

**26.** The Defendant's challenge to specific paragraphs of the Amended Affidavit is in some instances both disjointed and misleading. For example, the Defendants indicate that paragraph 27 of the affidavit, upon which the Government supposedly relies, "makes the generalized assertion that 'USA Training, Robert L. Teeven and Paul L. Teeven caused false statements concerning student enrollment status to be submitted to lenders and guaranty agencies ...' This Court has already condemned as insufficient allegations cast in this form." TRB, D.I. 144 at 3–4. The Defendants misstate the bases for this averment. In fact, the affidavit bases this conclusion on the indictment of Robert L. Teeven for failing to pay refunds, on Paul L. Teeven's admission that he and Robert L. Teeven deliberately failed to pay refunds, on interviews of school employees responsible for paying refunds, and on reviews of records of guaranty agencies and Department of Education records. Amended Affidavit, D.I. 102 at ¶ 27. See *infra*, for a full discussion of the "Refund Claim."

Defendant also concludes that ¶ 31 is insufficient as evidence of falsehood that produced

■ First, Defendants claim that the Government has relied primarily on the allegations of a single anonymous employee to demonstrate that Robert L. Teeven knew and directed both the material alteration of important records and the certification of false statements and representations to the Department in order to procure the necessary accreditation.[27] Defendants' posit that those paragraphs based solely on this employee fail the Court's own stated tests for reliability and particularization. FRB, D.I. 144 at 4 (citing *Teeven*, 1992 WL 683683.)

According to the Defendants, those paragraphs in the Amended Affidavit characterized by this flaw are: ¶¶ 26, 34, 38c, 40 and 43. FRB, D.I. 144 at 4. Within these averments however are other factors upon which Mr. Campbell relies. Defendant selectively

omits these other corroborating bases for Campbell's numerous conclusions.

For example, at paragraph 34 of the Amended Affidavit, D.I. 102, Campbell concludes that Robert L. Teeven directed that files reviewed by auditors be altered in order to disguise the school's lack of compliance with various regulations. Campbell bases this conclusion on his interview with an employee who had been directed to alter the files *and on interviews with employees who participated in the alterations* (emphasis added). Amended Affidavit, D.I. 102 at ¶ 34.

Similarly, at paragraph 38c, the. Government's conclusion that Robert L. Teeven directed that false and misleading computer data be given to auditors is based on an interview with the employee allegedly directed to make such alteration, *as well as a comparison of the information provided to*

accreditation, without explaining how it is insufficient. TRB, D.I. 144 at 3–6.

27. Essentially, Defendants' argument boils down to the position that the Court is still not in a position to "make its own independent determination" of the reliability of the one employee that is most damaging to Robert L. Teeven since he has not formally been identified. *Teeven*, 1992 WL 683683, at *10. This is not entirely true. After a seemingly unnecessary game of cat-and-mouse by both the Government and the Defendants, the witness was identified at oral argument as Thomas Kearns, the second in command to Robert L. Teeven at USA Training Academy. Transcripts, D.I. 149 at 37.

Although admittedly a close question, in the absence of direct and cross-examination, the Court is satisfied that this testimony is properly credited as support for the probable validity of the allegation. Specifically, the Court relies on Mr. Kearns' close dealings with Robert L. Teeven, his position with USA Training Academy, his personal knowledge of the allegations, Mr. Campbell's pledge under oath that all of the employees he relied upon were indeed reliable, the fact that Mr. Kearns' testimony was used favorably on some level to secure indictments against Mr. Teeven and the lack of any compelling evidence to adjudge him unreliable. Moreover, there is absolutely no explanation in the record as to a possible motivation *why* Mr. Kearns and the other employees would engage in the criminal activity of altering the records unless known by or directed to by Robert L. Teeven.

The Court takes note of Defendants' argument that Mr. Kearns gave testimony in exchange for lesser offenses, thereby giving him a natural motivation to be dishonest. Transcript, D.I. 149 at 70–71. Additionally, Defendants' eloquent argu-

ment at the hearing, Transcripts, D.I. 149 at 11–13, that the Court must be concerned with the constitutional implications of the risk of an erroneous deprivation of property, is not treated lightly. See *generally, Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Jonnet*, 530 F.2d 1123 (3d Cir.1976). In fact, the Section 3101(d) hearing is geared specifically towards that end. That is, the Court seeks to determine the probable validity of the debt as to these Defendants, so as to minimize the level of risk that these Defendants have been erroneously deprived of their property by virtue of the *ex parte seizure*.

Indeed; if Kearns's allegations were the *only* evidence supporting the probable validity of these claims the Court would be more hesitant in maintaining these writs. However, Kearns' allegations are not made in a vacuum. Rather, as discussed *infra*, there is evidence from other employees concerning Defendants' knowledge of the alteration of records and false certifications, admissions from Robert L. Teeven's brother Paul that they failed to pay refunds (misrepresenting their refund policy was a contributing factor to the school gaining accreditation), criminal indictments tending to show the probability of assorted violations, and extensive documentary evidence supporting the alleged violations.

As was the case with the state statute in *Mitchell*, the FDCPA provides for "judicial control of the process from beginning to end," thus minimizing "the risk that the *ex parte* procedure will lead to a wrongful taking." *Id.* at 616–17, 94 S.Ct. at 1905. When *all* of the factors here are assessed, the Court finds that the probable validity of the debt exists, thereby making it unlikely that the Defendant's have been erroneously deprived of their property rights.

*the Department at the time of the audit with the information provided to the Department later pursuant to a court order enforcing an Inspector General subpoena, showing that the data given during the audit was false* (emphasis added). *Id.* at ¶ 38c. See *Id.* at ¶ 40 (Government bases claim that Robert L. Teeven directed that student records be falsified on interview with employee so directed, *Office of Inspector General's analysis of computer programs and on interviews with employees who created or used these programs* ) (emphasis added).

The importance of these corroborating factors are in no way neglected by this Court.[28] Rather, in their totality, these factors are credited as demonstrating the probable validity of the debt. Moreover, there are many more averments that the Government relies on to link Robert L. Teeven to violations that aided the school in procuring accreditation. Amended Affidavit, D.I. 102 ¶¶ 25–44. Unlike their prior application and affidavit which simply offered conclusory allegations that Robert L. Teeven had directed or had knowledge of improprieties, in this instance the Government has properly tied their averments to particular sources, and has shown which sources enabled the affiant to make the averments alleging the Defendants' involvement in the activities. *Teeven,* 1992 WL 683683, at *7.[29] In contrast to the piecemeal approach offered by the Defendants, this Court concludes that when *all* of the evidence is viewed as a *whole*, the Government has met its burden of demonstrating the *probable* validity of the claim against Robert L. Teeven (emphasis added).

The Defendants' second approach is to urge this Court to summarily dismiss other forms of evidence proffered by the Government as corroboration for the statement from one high-level employee that he had been directed by Mr. Teeven to materially alter records.[30] Specifically, the Defendants take issue with the corroborating evidence offered by the Government at paragraphs 26 and 43. FRB, D.I. 144, at 6–7. The Defendants contend that the accusations of eight anonymous employees that Robert L. Teeven toured a trailer where employees had been directed to alter records and that those employees were never directed to hide or conceal the fact that they were altering records from Robert L. Teeven do not add anything to the analysis of the probable validity of the claim. *Id.* The Defendants claim that since these employees could not attest to the fact Mr. Teeven had directed them or was in a position to know what they were doing, their statements can in no way buttress the claim of the single employee who indicated that he had been repeatedly directed to alter important documentation. *Id.*

The Court strongly disagrees and finds that these averments are indeed significant in aiding a determination of the *probable validity* of the claim that records were altered in order to procure accreditation. Although the employees interviewed could not definitively attest to the fact that Mr. Teeven knew or gave specific directions to these employees to alter records, the Court at this hearing is entitled to make reasonable inferences from their statements in addressing the underlying issue of the probable validity

**28.** In fact, even if the Court were not to credit the testimony of the anonymous employee, *supra* note 27, the Court would still find that the Government had established via its documentary and other forms of evidence, the probable validity of the debt.

**29.** Additionally, unlike the prior affidavit, the Government's affidavit indicates that the "employees with whom Campbell spoke made their statements on the basis of personal knowledge." Amended Affidavit, D.I. 102, at 3. *Cf. Teeven,* 1992 WL 683683, at *10. Also, in this instance the Government does in fact attest to the reliability and credibility of the employees. Amended Affidavit, D.I. 102 at 3 ("For all of the statements contained in the affidavit which are based on

employee interviews, I have no reason to believe that the employees were not truthful in their statements"). *Cf. Teeven,* 1992 WL 683683, at *10.

**30.** Having found that there exists sufficient evidence to support the probable validity of the debt as against these defendants for numerous reasons, the Court does not examine in great detail the very technical and circular argument made by the Defendants that the Plea Agreement reached in the criminal case somehow demonstrates the lack of evidence supporting the probable validity of the False Accreditation Claim. FRB, D.I. 144 at 4–5; Transcripts, D.I. 149 at 71–72.

that the alleged violations were known to or directed by Robert L. Teeven. Specifically, knowledge by Mr. Teeven of material alterations and false certifications can reasonably be inferred from the allegation by numerous employees that he toured the trailers while employees who had been directed to alter records were openly making said alterations. When taken with all of the other evidence for the conclusion that records were altered and false certifications were made, this Court is satisfied of the probable validity of the False Accreditation Claim, thereby supporting the probable validity of the debt.[31]

### 2. THE REFUND CLAIM

This theory of recovery arises under the False Claims Act. 31 U.S.C. § 3729 (hereinafter referred to as "The Act"). The Act provides for civil liability to any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The Act expressly defines "knowingly" to mean that, a person "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard for the truth or falsity of the information, and no proof of specific intent to defraud is required."

To support the probable validity of the refund charge the Government points to three pieces of "overwhelming" evidence: (1) the fact that a grand jury found probable cause to believe that Robert L. Teeven had deliberately delayed refunds; (2) that Paul L. Teeven admitted that he and Robert had deliberately delayed refunds; and (3) that a school employee stated that he was directed repeatedly by Robert L. Teeven over the course of many years to delay refunds. *Id.* at 4.

The Defendants counter by challenging the three pieces of evidence tendered by the Government, claiming that they do not establish the probable validity of the Refund Claim. TOB, D.I. 114 at 4–11. However, Defendants more fundamental position is that even if the Government could establish a failure to pay refunds attributable to Robert L. Teeven, as a matter of law, this does not constitute the knowing submission of a false claim to the Government warranting liability under the Act. TOB, D.I. 114 at 10 n. 5. Specifically, the Defendants contest the Government's interpretation of the Act, TRB, D.I. 144 at 8–9,[32] that is, the notion that liability is proper under the Act absent a showing that Robert L. Teeven either made or caused to be made a *false statement* in connection with the allegedly false claim (emphasis added). *Id.*[33]

**31.** Once again, the Defendants do not offer any rebuttal evidence, electing solely to argue that the Government's affidavit is insufficient. The Court finds this somewhat ironic considering that at the hearing the Defendant implored this Court to consider the importance of giving a party deprived of their property "adversarial input" so at to minimize the risk of an erroneous deprivation of property. Transcripts, D.I. 149 at 14. See *generally, Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).

**32.** The Government posits that to be liable under the terms of the Act, Robert L. Teeven need not have made or caused to be made any *false statements* in connection with the refund claim which caused any fake claim. GOB I., D.I. 135 at 7 (responding to TOB, D.I. 114 at 4–11) (emphasis added). Rather, the Government indicates that by virtue of the Act's construction by the Supreme Court and Third Circuit, it is sufficient for liability to attach that Robert L. Teeven knowingly caused to be presented to the Department of Education false and inflated default claims based on a policy of deliberately failing to pay student

refunds. GOB I., D.I. 135 at 4–8 (citations omitted). *Id.* at 5–7.

Specifically, the Government contends that Robert L. Teeven knew:

that if a student defaulted on his loan and had not been paid a refund that was due, the necessary and foreseeable result would be that the outstanding loan balance for the student would be too high and thus the default claim submitted to the Department of Education would be too high. He thus knew that by deliberately failing to pay refunds he was causing inflated default claims to be submitted to the Department of Education.

GOB I., D.I. 135 at 7.

**33.** As to the Government's grand jury probable cause theory, the Paul Teeven admissions, and the allegation from one employee that Robert L. Teeven knew and directed the delay and non-payment of refunds, the Defendants emphasize that each of these elements is devoid of any allegation that Robert L. Teeven made a false statement or caused one to be made. See gener-

■ The Court rejects Defendants' argument. Neither the text of the statute nor case law interpreting it, mandate that a Defendant is only liable when he/she has made or caused to be made false statements in connection with a false claim.

■ In finding probable cause existed to indict Robert L. Teeven,[34] a grand jury explicitly found that Robert L. Teeven, as Chairman of the Board instructed his subordinates to not pay refunds that were due. Amended Affidavit, D.I. 102 at ¶ 6, 6–7 (citing *United States v. Robert L. Teeven*, Crim. No. 91–95). Defendants contend that the Court should simply ignore these findings because in the Memorandum of Plea Agreement filed in the criminal case the United States Attorney said that he "[did] not have any evidence as of the date of this Agreement that Robert L. Teeven has committed any crimes other than the ones alleged in the indictment." Memorandum of Robert L. Teeven Plea Agreement, D.I. 115, at ¶ 6 Exhibit 2. The Court refuses to give this statement made in the context of a plea agree-

ment undue weight here. This overly simplistic argument is rejected on its face, because the fact that there was supposedly no evidence of a *crime* in no way diminishes the grand jury's conclusions regarding the refund scheme for the purposes of a civil action. *Accord,* GOB I., D.I. 135 at 7–8.[35]

■ Additionally, Paul Teeven in his Memorandum of Plea Agreement, admits that both he and Robert L. Teeven knew and directed this improper refund policy. Memorandum of Paul L. Teeven Plea Agreement, D.I. 115, Exhibit 3 at 44.[36] When taken with the claim from an employee already adjudged reliable,[37] that Robert L. Teeven directed him for many years to delay or avoid paying the necessary refunds, Amended Affidavit, D.I. 102 at 8, the Government has more than satisfied its burden of showing the probable validity of its refund charge.

The False Claims Act is a far-reaching remedial statute extending to "all fraudulent attempts to cause the Government to pay out sums of money." *U.S. v. Neifert–White Co.,* 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19

---

ally TOB, D.I. 114 at 4–11. Consequently, the Defendants conclude that "not only is the record barren of any support for the government's contention that it had established the probable validity of its False Claims Act refunds complaint under the applicable standard of the FDCPA, but also that the record actually affirmatively refutes that legal contention. *Id.* at 9.

Defendants are correct in their factual conclusion that none of these pieces of evidence tendered by the Government establishes that Robert L. Teeven made any false *statements* directly or caused any false statements to be submitted to the Department of Education in support of false claims. However, as is discussed briefly *infra,* this evidence when viewed en toto does indeed establish the *probable* validity that Robert L. Teeven knowingly engaged in *a policy of deliberately failing to pay refunds* (emphasis added). Thus, the sole question confronting this Court under this allegation is whether Teeven's alleged knowledge and direction of this refund policy is sufficient to make out a claim under the False Claims Act so as to support the probable validity of the debt under the FDCPA.

34. The grand jury found probable cause to indict Mr. Teeven under 20 U.S.C. § 1097(a), which provides for criminal penalties for "any person who knowingly and wilfully embezzles, misapplies, steals, or obtains by fraud, false statement, or forgery any funds, assets or property provided or insured under this subchapter and part C of subchapter I of chapter 34 of Title 42 . . . ."

35. The fact that "Mr. Teeven has never been indicted for any charge of *fraud* or *false statements* in connection with the government student financial aid funds . . .," TOB, D.I. 114 at 6, is of no relevance to the issue of whether Mr. Teeven probably engaged in this violative refund policy. Thus, the Government's grand jury theory does not fail as a matter of law. *Cf., Id.*

36. The Defendants beg the question when they posit that "[t]he United States Attorney made no statement in any way accusing Robert L. Teeven of the false statement offense to which Paul L. Teeven pled guilty." TOB, D.I. 114 at 8. Rather, as the Defendants subsequently indicate in a footnote, TOB, D.I. 114 at 9 n. 3, during the plea bargain colloquy the U.S. Attorney indicated that as part of Paul Teeven's trial the Government would have proved that Robert L. Teeven instructed subordinates to delay refunds. Memorandum of Paul L. Teeven Plea Agreement, D.I. 115, Exhibit 3 at 56.

37. See *supra* note 27. Once again the Court reiterates that the Court need not necessarily pass on the reliability of this witness to validate its finding of "probable validity" since there is such extensive corroborative documentary and testimonial evidence concerning this policy. See *supra* note 28.

L.Ed.2d 1061 (1968). The Third Circuit test for liability under the False Claims Act is "whether the wrong of the defendant was an important, even an essential factor in subjecting the government to an enforceable demand for money." *U.S. v. Veneziale,* 268 F.2d 504, 505 (3d Cir.1959). Here, the Defendants' alleged failure to pay timely refunds resulted in the "submission to the U.S. Department of Education of at least . 2800 inflated default claims," Amended Application, D.I. 102 ¶ 5 at 5–6, thereby "induc[ing] the government to assume the obligation which it has had to perform." *Veneziale,* 268 F.2d at 506. This obligation cost the United States millions of dollars which would have been reduced astronomically but for the Defendants alleged failure to pay timely refunds. Because the Defendants knowingly assisted in causing the Government to pay claims which were grounded in fraud, the Defendants are liable under the Act. *Accord, Id.* (citing *U.S. ex rel. Marcus v. Hess,* 317 U.S. 537, 544, 63 S.Ct. 379, 384, 87 L.Ed. 443 (1943).

▮ The fact that the Defendants arguably neither made nor caused to be made any false statements or certifications to the Department of Education does not alter this conclusion. TRB; D.I. 144 at 8–11.[38] The False Claims Act covers indirect mulcting of the government. *U.S. v. Lagerbusch,* 361

F.2d 449 (3d Cir.1966) (defendant who made false representations to a private corporation held to have caused the submission a false claim to the government, where the government paid the corporation's operating costs, including the sums improperly obtained by the defendant). *Accord, U.S. v. Rohleder,* 157 F.2d 126 (3d Cir.1946).

▮ Moreover, defendants can cause a false claim for payment to be presented to the Government by their conduct. *Hess,* 317 U.S. at 543–44, 63 S.Ct. at 383–84.[39] Like the Defendants in *Hess,* the taint of the Defendants refund policy entered into every swollen estimate which was the basic cause for payment of every dollar by the Department of Education. *Id.* (by initially engaging in fraudulent bidding, defendants caused the government to pay claims of local sponsors in order that they might in turn pay respondents under contracts found to have been executed as a result of the fraudulent bidding). Thus, this Court is satisfied that the Government having shown the probable validity that Robert L. Teeven knowingly engaged in this refund policy, can easily show that this conduct is subject to liability under the False Claims Act. As a consequence, this Court finds the probable validity of the Refund Claim so as to support the probable validity of the debt owed by the Defendant.[40]

**38.** See *infra* note 39.

**39.** Essentially, it is the Court's position that the Government has shown the probable validity that Robert Teeven had actual knowledge that there was a fraudulent refund policy in effect, 31 U.S.C. § 3729(b) (definition of knowingly), and that this policy caused claims to be submitted to the Government. Such claims were "false" because they were inflated. *Accord, Hess,* 317 U.S. 537, 63 S.Ct. 379. Thus, in reaching its finding that the Defendants are liable under the False Claims Act the Court need not rely on the Government's assertion "that Robert L. Teeven was required to and did certify to the Department that he was familiar with the Department's statutes and regulations and would insure that they were followed." GOB I., D.I. 135 (citing Amended Affidavit, D.I. 102 ¶ 25 at 28). The Court simply takes judicial notice of these certifications. See TRB, D.I. 144 at 10–12, challenging the legitimacy of finding Robert L. Teeven personally liable under the False Claims Act on the basis of his certifications.

**40.** The Court takes note of Defendants constitutional concern, raised for the first time at the

section 3101(d) hearing, about the appropriateness of *ex parte* relief for claims raised under a broad "fault" standard. Transcripts, D.I. 149 at 14, 72–73. Defendants seem to suggest that the Supreme Court has in some way held that *ex parte* relief is inappropriate where the case involves more than a cursory amount of documentary proof. *Id.,* citing *Mitchell.* The *Mitchell* court suggested in dicta, that such cases were ill-suited for *ex parte* determination. *Mitchell,* 416 U.S. at 617, 94 S.Ct. at 1905 (citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

Unlike the state statutes being dissected in those cases, where there is a concern about the balancing of rights between a private creditor and private debtor, the FDCPA is a Congressional enactment aimed at aiding the Government in combatting destructive national economic fraud. The FDCPA establishes comprehensive procedural safeguards to protect the Defendant from an erroneous deprivation. See *supra* note 21. More importantly, the legislative history suggest that Congress was deeply concerned with protecting the rights of the debtor and ensuring the

## C. Government's Showing of Compelling Need [41]

As a prerequisite to obtaining prejudgment relief without a prior hearing under the FDCPA, the Constitution requires a showing by the Government of a "compelling need." *Teeven*, 1992 WL 683683, at *5, citing *Doehr*, 501 U.S. 1, 111 S.Ct. 2105. This Court found in its prior opinion that "the Government did demonstrate a compelling need and exigent circumstances *when it made its ex parte application for prejudg-*

constitutionality of its enactment, and therefore sought to limit the use of prejudgment remedies to instances where the Government could make a showing to the Court of "compelling circumstances." H.R.Rep. No. 736, 101st Cong., 2d Sess. 27. *Accord, Doehr*, 501 U.S. at 17–19, 111 S.Ct. at 2116; *Teeven*, 1992 WL 683683, at *5–8; *cf. Mitchell*, 416 U.S. 600, 94 S.Ct. 1895.

In view of the constitutional protections afforded the Defendant; this Court finds that the statute has struck a suitable constitutional balance among the competing interests of the Government and alleged debtors. *Doehr*, 501 U.S. at 911, 111 S.Ct. at 2112 (courts should consider the private interest that will be affected by the prejudgment remedy, the risk of an erroneous deprivation through the procedures under attack, the probable value of additional or alternative safeguards and principal attention to the interest of the party seeking the prejudgment remedy). Thus, to the extent that the Defendants are arguing that absent a pre-deprivation hearing the statute is unconstitutional, that argument is rejected.

To the extent that the Defendants are arguing that a Court may never grant *ex parte* relief in complicated cases, with some broad standards of fault, the Court rejects that notion. The mere fact that it may be called on to make some "complicated" assessments under broad standards of fault, Transcripts, D.I. 149 at 14, does not alter the laudable constitutional balance struck by the Congress. Adopting Defendants' interpretation would essentially render the FDCPA meaningless, since almost every imaginable claim brought under this Act will arguably be complicated, involving broad standards of fault. Although this "fault" theory offered by the Defendants may indeed be a "red-flag," it is not constitutionally dispositive.

41. Having found that the Government has shown the probable validity of both the False Accreditation Claim and the Refund Claim in support of the probable validity of the debt owed under the FDCPA, this Court need not devote extensive analysis to the arguments raised by the parties concerning the third independent claim for the probable validity of the debt raised by the Government—false representations as to the length of the course. Although no finding is needed to

*ment remedies* (emphasis in original)." *Teeven*, 1992 WL 683683, at *6.[42] The Court noted that in making its determination it did not consider any rebuttal evidence from the Defendant that might be sufficient to rebut the Government's *ex parte* showing of compelling need. *Id.* 1992 WL 683683, at *6 n. 5.

The evidence presented to the Court by the Defendants however, does nothing to dispel the Court's finding that the Government has demonstrated a "compelling

support the probable validity of the debt, suffice it to say, that after a careful review of the record, this Court is satisfied that the Government has shown the probable validity that Robert L. Teeven presented false claims to the Department of Education as to the length of the course at USA Training Academy, resulting in the payment of millions by the Department. Accordingly, the Defendants are liable under the False Claims Act.

Moreover, for the reasons stated throughout this opinion the Court rejects the Defendants separately offered argument that the Amended Affidavit fails to meet the applicable statutory and constitutional tests for establishing with particularity the probable validity of the debt. TOB, D.I. 114 at 27–31.

42. The Court found that the Government had established reasonable cause to believe that the defendants had or were about to convert the debtor's property into money, securities, or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying or defrauding the United States. *Teeven*, 1992 WL 683683, at *6. See 28 U.S.C. § 3101(b)(1)(C). The Court based its holding on (1) the fact that the Family had placed numerous properties valued in the millions on the market for sale; (2) that the Defendants had strategically converted property into evidence of debt; (3) that USA Training Academy had mortgaged its property in an effort to get judgment proof; and (4) that the Defendants had engaged in other efforts at converting property with the hope of obtaining liquid assets. *Teeven*, 1992 WL 683683, at *6–7. For specific details, see Amended Affidavit, D.I. 102 ¶ 9 at 10–15.

The Court concluded that the sale of properties would "surely have the effect of hindering the recovery of the debt by the United States" since "[l]iquid assets are easily hidden" and that the commingling of funds from the sale of any properties and purchase of new properties would hinder the Government in tracing the monies. *Id.* 1992 WL 683683, at *8. *Accord, Doehr*, 501 U.S. at 15–17, 111 S.Ct. at 2115 (a properly supported claim that a defendant "was about to transfer or encumber his real estate or take any other action ... that would render his real estate unavailable to satisfy a judgment" would constitute an "exigent circumstance").

need" for the writs. In fact, careful scrutiny shows that the Defendants' efforts at rebuttal are no more than a feeble attempt to resurrect an already rejected legal argument. In particular, the Defendants contend that they have never hidden nor are they now attempting to hide assets. TOB, D.I. 114 at 33. This is simply another way of making the argument that "no allegations can be made that any of Mr. Teeven's actions with respect to his assets have been fraudulent or secretive." *Teeven,* 1992 WL 683683, at *7, *citing* D.I. 73 at 34–35. This is irrelevant.

■ As the Court has already noted there is no "intent" requirement under section 3101(b).[43] The fact remains that if these properties were indeed sold the Defendants *could* easily hide the proceeds and such would indisputably have the *effect* of hindering the Government's efforts at collecting the debt (emphasis added). The fact that there has been a well-documented and undenied attempt by the Defendants to convert and/or sell their properties gives this Court reasonable cause to believe that the Defendants actions may have the effect of hindering the Government's attempt to collect the debt. The Court is unswayed by the Defendants' self-serving statement that their 'voluntary disclosures' concerning their most recent sales of property, "plainly demonstrate[ ] that no danger of hiding assets exists in this case." TOB, D.I. 114 at 35. Further, Defendants' empty assurances that they will aid the Government in tracing monies by keeping detailed financial records about the sale of properties, *Id.,* does nothing to alleviate that compelling concern. As a result, the

Court finds that the Defendants have in no way rebutted the Government's showing that absent the writs, the Defendants' widespread attempt to sell and transfer property will hinder the Government in collecting the debt. In short, the Government has demonstrated that compelling circumstances exist warranting the writs.

### D. *Conclusion*

The Court concludes for all of the reasons stated herein that the Defendant's Motion to Quash is denied.

### VI. *MOTION TO CONSIDER ALTERNATIVE REMEDIES*

■ As indicated *supra,* "[t]he court may at any time on its own initiative or the motion of any interested person, . . . make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. Here, these Defendants argue that (1) the writs as issued exceed the Government's needs; (2) an alternative remedy exists that will adequately protect the Government's interest; (3) the Constitution requires that the prejudgment remedy imposed is not more intrusive than necessary; [44] (4) courts implementing other forms of equitable power show concern for the fundamental rights of the persons subject to freeze orders; [45] (5) that the writs preclude the Defendants from paying their living expenses, business expenses and attorney's fees; [46] and (6) that there exists no compelling need for the writs,[47] or at least, there is

---

**43.** As a result, the Court does not pass on the question of whether the Defendants actually possessed an intent to hinder or delay the Government from collecting the debt.

**44.** Defendants' constitutional argument based on Equal Protection and the First Amendment is a meritless posture that has no comprehensible application to the facts of this case. TMAR, D.I. 112 at 4–8. Defendants are correct in noting that under the statute itself the Court is authorized to consider the adequacy of alternative, less restrictive remedies. 28 U.S.C. § 3101(d)(2)(D). The Court anticipates a hearing in the immediate future on a plan aimed at preserving the seized assets. At the post-deprivation hearing, the Court expressly implored the parties to attempt

to mutually develop such a plan. Transcripts, D.I. 149 at 84, 89, and 94.

**45.** See *supra* note 46.

**46.** The Court reiterates its position that after a thorough and exhaustive review of the record it is not persuaded that the Defendants are suffering such hardship as to offend the Court's sense of equity. As a result, this argument is rejected.

**47.** To the extent that this is simply a more detailed argument by the Defendant that the Government has not demonstrated compelling circumstances warranting these writs it is rejected for the reasons stated *supra.*

no compelling need for a remedy more harsh than that proposed by the Defendant. Teeven Motion for Alternative Remedies (hereinafter "TMAR"), D.I. 112; Teeven Reply Brief on Motion for Alternative Remedies (hereinafter "TRB II), D.I. 142.

■ The Court is unpersuaded by these claims. The Defendants offer absolutely no support for *how* the writs exceed the Government's interest in protecting its needs. TMAR, D.I. 112 at 2. Without the writs, the Defendants could potentially wreak havoc to the Government's efforts to collect the debt owed through the sale of properties and potential commingling of funds, a process towards which the Defendants have already shown a tendency.

■ Additionally, Defendants' proposed remedy that its own financial advisor William Abernathy be charged with maintaining the assets, recording all transactions and disbursements, and that the Government be allowed the right to "apply to the Court in advance of any such transaction for whatever relief to which it may be entitled," *Id.* at 3, is properly characterized by the Government as "no remedy at all." Government Opposition Brief on the Motion for Alternative Remedies (hereinafter "GOB II"), D.I. 137. The Court does not deem it reasonable to force the Government into Court every time the Defendants wish to engage in a problematic disbursement. Nor does the Court at this point wish to create a situation where the Defendants can continue to create assets held by the entireties, continue to convert their real property into liquid assets and continue to convey their property to bona fide purchasers, so as to thwart the very purpose of the FDCPA.

Accordingly, the Defendants' motion is denied with the proviso that the Court anticipates a hearing in the immediate future to solidify a plan either agreed upon by the parties or imposed by this Court for the preservation of the seized assets. The plan could also include some relief as requested by the Defendants.